# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KENNETH WHITE, ) | Case No. 1:24-cv-1506 |
| ) | |
| Plaintiff, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | Magistrate Judge |
| ) | James E. Grimes Jr. |
| ALLSTATE INSURANCE CO. *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION AND ORDER

Plaintiff Kenneth White, proceeding without a lawyer, sued several insurance companies after changes to his insurance policy. He brings various claims, including breach of contract, breach of fiduciary duties under the Employee Retirement Income Security Act, identity theft, and fraud. Defendants move to dismiss the complaint. As relevant here, they claim that Plaintiff's claims are time barred. For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss.

## JURISDICTION

Although neither party raises the issue, the Court has an independent obligation to examine its own jurisdiction. *See, e.g., Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted); *Mercurio v. American Express Centurion Bank*, 363 F. Supp. 2d 936, 938 (N.D. Ohio 2005). Based on its examination of the record, the Court determines that it has subject matter jurisdiction under 28 U.S.C. § 1332. The parties are diverse. The insurance company Defendants are incorporated in and operate their principal places of business in Illinois and

Nebraska, the individual Defendants named in the original complaint were Ohio residents, and Plaintiff is domiciled in West Virginia. As for the amount in controversy, this dispute involves the cash value inside an insurance policy conservatively valued at $10,000. In addition, Plaintiff brings claims for identity theft and fraud under Ohio law. Further, Plaintiff seeks punitive damages. Based on its experience, and in light of the record as a whole, the Court cannot say "to a legal certainty" that damages on those claims, if proven, do not meet the jurisdictional threshold. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

## STATEMENT OF FACTS

The complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff, as it must in the present procedural posture. On a motion to dismiss, the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). In this case, Defendant Lincoln Benefit Life Company attaches two insurance policies as exhibits to its motion to dismiss. (ECF No. 34-2; ECF No. 34-5.) The formation and terms of these insurance policies are central to Plaintiff's claims. He relies on and refers to the details of their contents in his complaint. Although Mr. White alleges that the policies were created fraudulently, he does not dispute the authenticity of the documents themselves. That is, he does not dispute that the exhibits are accurate copies of the policies, whatever their origin. Because these documents are integral to

2

the complaint, the Court considers them as well. *See Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. National Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### A. Relevant Facts

On March 14, 2005, Plaintiff Kenneth White applied for a variable life insurance policy through Norman Grassi, a broker working for Defendant Allstate Insurance Company. (ECF No. 33-4, PageID #501; ECF No. 34-2, PageID #611.) On April 7, 2005, Lincoln Benefit Life issued the policy, known as Policy 922, to Mr. White. (ECF No. 33, PageID #473; ECF No. 34-2, PageID #611.) The policy had a face value of $150,000 and a rider for an additional insured in the amount of $350,000. (ECF No. 33, PageID #473; ECF No. 34-2, PageID #611.) In 2007, Mr. White increased the policy's face value to $500,000. (ECF No. 33, PageID #474.)

To keep the policy in force, Mr. White had to pay semi-annual premiums of $1,200. (ECF No. 34-2, PageID #613.) Under the terms of the policy, "the amount [he paid would] affect the policy value. If [he paid] too little, the policy [would] stop[,] subject to the grace period." (*Id.*, PageID #623.) Additionally, the policy states that Mr. White would receive a "[r]eminder notice if [he paid] annually, semi-annually, or quarterly." (*Id.*)

Mr. White paid his first premium of $1,200 on April 12, 2005. (ECF No. 43-1, PageID #992.) He continued making semi-annual payments in that amount until November 24, 2008. (*Id.*) Mr. White does not allege that he made any changes to his policy other than in 2007 when he requested that the policy value be increased to

3

$500,000. (ECF No. 33, PageID #475.) It appears that the last policy-related communications Mr. White received from Lincoln Benefit Life were a 2011 investment report and a letter dated March 8, 2012 notifying that he had a payment due. (ECF No. 33-1, PageID #480; ECF No. 43-1, PageID #991.) However, it is unclear whether he received that correspondence during discovery in his previous lawsuits or on the dates of the notices.

On December 26, 2021, after years of non-payment and non-communication, Mr. White requested information on Policy 922 from Allstate. (ECF No. 33-3, PageID #486.) On January 5, 2022, Lincoln Benefit Life responded that Policy 922 was surrendered on August 14, 2012 and that a new policy, Policy 103, was issued on October 16, 2009 and lapsed on January 16, 2010. (*Id.*, PageID #488.)

**B.     Lawsuits**

Plaintiff alleges that these changes result from the unauthorized actions of Ranice Westerfield and Robert Malbasa, employees of Allstate and later Lincoln Benefit Life. (ECF No. 33-1, PageID #481.) Westerfield is also Mr. White's ex-wife. (ECF No. 33, PageID #477.) The changes included: removing his children as beneficiaries and listing Westerfield as the sole beneficiary (*id.*; ECF No. 43, PageID #977); forging his signature to create Policy 103 during his incarceration (ECF No. 33-1, PageID #475 & #478); and changing his address in Allstate's records to prevent him from discovering the changes and so that Westerfield would receive any proceeds from the surrender (*id.*, PageID #477 & #481). Mr. White alleges that he did not

4

learn of these fraudulent actions until November 2022, when he obtained discovery from Defendants in a prior lawsuit. (*Id.*, PageID #475.)

Upon learning of Policy 922's surrender and conversion into Policy 103, Mr. White filed numerous suits in federal and State courts. On April 14, 2022, he sued Allstate, Everlake Life Insurance Company, Lincoln Benefit Life, Robert Malbasa, and Ranice Westerfield in federal court. *White v. Allstate Ins. Co.*, No. 5:22-cv-604, 2023 WL 4181299 (N.D. Ohio June 26, 2023). On June 26, 2023, the Court dismissed the case without prejudice for lack of subject matter jurisdiction. *Id.*, at *1. On August 9, 2023, Mr. White commenced a second lawsuit against the same defendants and asserted similar claims. *White v. Allstate Ins. Co.*, No. 5:23-cv-1551, 2023 WL 6904196, at *1 (N.D. Ohio Oct. 19, 2023.) On October 19, 2023, the Court dismissed the second lawsuit without prejudice for lack of subject matter jurisdiction based on the inclusion of non-diverse defendants. *Id.*, at *3–4. On November 22, 2023, the Court denied a series of post-judgment motions. *White v. Allstate Ins. Co.*, No. 5:23-cv-1551, 2023 WL 8190134, at *1 (N.D. Ohio Nov. 22, 2023).

In March 2024, Mr. White attempted to initiate a third lawsuit against the same defendants in State court. (ECF No. 34-3, PageID #656.) Because Mr. White had been "[d]eclared a vexatious litigator pursuant to R.C. 2323.52," he could not file his complaint without prior leave of court. (ECF No. 34-4, PageID #849.) The State court denied his motion for leave. (*Id.*)

This action is the fourth time Mr. White has attempted to assert the same or similar claims against Defendants and their agents. Again, he first filed suit on April

5

14, 2022 after receiving a letter dated January 5, 2022—though he claims he did not learn of the alleged fraud related to his policies until November 2022.

## STATEMENT OF THE CASE

In his amended complaint, Plaintiff brings claims against Defendants Allstate, Everlake Life Insurance, and Lincoln Benefit Life for breach of contract, breach of fiduciary duties under ERISA, "civil enforcement" under ERISA, identity theft, and fraud. Also, he brings a separate claim for punitive damages. (ECF No. 33.)

Plaintiff alleges that Malbasa and Westerfield "collaborated and conspired" to make unauthorized changes to his life insurance policy and deprive him of the benefits guaranteed under the original policy he purchased in 2005. (ECF No. 33, PageID #474–475 & #477; ECF No. 43, PageID #977.) Plaintiff contends that, had the original policy not been wrongfully surrendered, his insurance policy investments would have continued increasing. (ECF No. 33, PageID #474; ECF No. 33-1, PageID #480.) Plaintiff claims that the insurance companies are responsible for the fraudulent acts of their agents and failed to intervene or supervise their employees. (ECF No. 33, PageID #473.)

To support his allegations, Plaintiff presents paperwork regarding the purchase of his Lincoln Benefit Life insurance policy (ECF No. 33-4), a FINRA Broker Check Report detailing disclosures regarding Malbasa's employment and past sanctions against him (ECF No. 33-6, PageID #526–542), and letters sent to Allstate in December 2021 requesting policy information along with the responses to them (ECF No. 33-3, PageID #485–86 & #488–89).

Additionally, he provides the allegedly fraudulent policy paperwork that Malbasa submitted to the term conversion department at Lincoln Benefit Life on September 28, 2009. (ECF No. 33-5, PageID #509.) The paperwork shows that Policy 922 will be converted to Policy 103 and identifies Ranice Westerfield-White as Mr. White's spouse and sole beneficiary with a 100% share. (*Id.*, PageID #511.) The paperwork lists Malbasa as the "writing agent" receiving a commission of 85% and Westerfield as the "partner agent" receiving a 15% commission. (*Id.*, PageID #514.) It includes an "agent report" with boxes checked to answer "No" to the following questions: "Is the proposed insured related to you?" and "Are there any proposed insureds you did not see when you took the application?" (*Id.*, PageID #514.) Plaintiff maintains that he did not give Westerfield or Malbasa permission to effectuate this policy (ECF No. 33, PageID #473–78; ECF No. 33-1, PageID #481) and that the paperwork is forged and fraudulent (ECF No. 33, PageID #475 & #476).

Lincoln Benefit Life filed a motion to dismiss (ECF No. 34), which Allstate and Everlake Life Insurance joined (ECF No. 35; ECF No. 36).

## ANALYSIS

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Evans-Marshall v. Board of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court holds *pro se* pleadings to a "less stringent standard than formal pleadings drafted by 9 lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Liberal construction for *pro se* litigants does not "abrogate basic pleading" requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008).

Defendants contend that the Court should dismiss Plaintiff's amended complaint because each of its claims is time barred. In such circumstances, "dismissing a claim under Rule 12(b)(6) is appropriate when the allegations in the complaint affirmatively show that the claim is time-barred." *Baltrusaitis v. International Union,* 86 F.4th 1168, 1178 (6th Cir. 2023) (cleaned up)).

I.  **Statute of Limitations**

As a preliminary matter, the Court notes that "civil enforcement" and "punitive damages" are not independent causes of action. Plaintiff lists "civil enforcement" as a legal claim, citing 29 U.S.C. § 1132, the civil enforcement section of ERISA. But civil enforcement is a mechanism by which a plaintiff may bring a claim, not a substantive claim itself. In other words, civil enforcement is a "how," not a "what." And punitive damages are a remedy that courts can provide to a prevailing plaintiff, not a separate claim in and of themselves. A claim for punitive damages is not an independent cause of action, but a remedy. *Harry v. Kent Elastomer Prods.*, 538 F.

8

Supp. 3d 776, 784 n.12 (N.D. Ohio 2021) (citations omitted). Punitive damages cannot stand independently; they rise and fall with the substantive claims. If Plaintiff's causes of actions are dismissed, he does not have a claim for punitive damages either.

That leaves four causes of action for the Court's analysis: breach of contract, breach of fiduciary duties under ERISA, identity theft, and fraud. The Court considers the statute of limitations for each in turn. Plaintiff did not file this suit until September 4, 2024, and even his first lawsuit over this same issue did not commence until April 14, 2022. Therefore, for any of his claims to be timely before the application of equitable tolling, they must have limitations periods lasting until at least April 2022.

### I.A. Breach of Contract

Defendants move to dismiss Plaintiff's breach-of-contract claims, arguing that Ohio's eight-year statute of limitations in Section 2305.06 of the Ohio Revised Code bars them as untimely. (ECF No. 34-1, PageID #560; ECF No. 44, PageID #1030–31.) Plaintiff maintains that a fifteen-year statute of limitations applies to his claims. (ECF No. 43, PageID #981–82 (citing *Transportation Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*, 969 F. Supp. 2d 875, 885 n.17 (S.D. Ohio 2013)).

Section 2305.06 currently provides that the statute of limitations for breach of a written contract is "six years after the cause of action accrued." Ohio Rev. Code § 2305.06 (effective June 16, 2021). The Ohio General Assembly has changed this statute of limitations twice in the last two decades. Before 2012, the statute of limitations was fifteen years. *See id.* (2011). Effective June 28, 2012, the General

9

Assembly reduced the limitations period to eight years. *Id.* (2013). Then, effective June 16, 2021, the legislature reduced it again to six years. *Id.* (current).

These amendments provided for their application to causes of action that had already accrued (that is, to events occurring before the effective dates of the amendments). For causes of action that accrued before June 28, 2012, the 2012 amendment provided that "the period of limitations shall be eight years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of this act, whichever comes first." 2012 Sub. S.B. 224, Section 4. In other words, for breach-of-contract claims accruing before June 28, 2012, the limitations period expires on either June 28, 2020 (eight years from the amendment's effective date) or the expiration of the original limitations period of fifteen years, *whichever date is earlier.*

Under Ohio law, a cause of action accrues "when the wrongful act is committed." *Lutz v. Chesapeake Appalachia*, 717 F.3d 459, 473 (6th Cir. 2013). For breach-of-contract claims, a cause of action accrues "when the breach occurs or when the complaining party suffers actual damages as a result of the breach." *Id.* It does not turn on a plaintiff's knowledge. On Plaintiff's allegations, his claim for breach of contract accrued when Policy 922 was converted (allegedly fraudulently) to Policy 103 on October 16, 2009. (*See* ECF No. 34-5, PageID #862.) Therefore, under the transition provision of Ohio law, the limitations period for his breach-of-contract claim expired on June 28, 2020. But he did not file any lawsuit pursuing his claims until April 2022.

10

Because his cause of action accrued before the 2012 amendment, Plaintiff argues that the fifteen-year statute of limitations applies. (ECF No. 43, PageID #981 & #987.) However, Plaintiff overlooks the "whichever comes first" clause of the transition provision. Because June 28, 2020 comes before the expiration of the fifteen-year period, the limitations period for Plaintiff's breach-of-contract claim expired on June 28, 2020, and his lawsuit is untimely.

### I.B. Identity Theft

The tort of identity fraud under Section 2913.49 has a five-year statute of limitations. Ohio Rev. Code § 2305.09. The statute of limitations for Plaintiff's identity theft claim began to run in October 2009 when, according to the amended complaint, Defendants' agents effectuated Policy 103 without his consent, using Mr. White's identity and forging his signature. Therefore, the limitations period for this claim expired in October 2014.

### I.C. Breach of Fiduciary Duty under ERISA

29 U.S.C. § 1109 provides for liability for breach of fiduciary duty under the Employee Retirement Income Security Act. ERISA contains a statute of limitations requiring such claims to be brought "within three years of the date the plaintiff first obtained 'actual knowledge' of the breach or violation forming the basis of the claim, but in no event later than six years after the breach or violation." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 548 (6th Cir. 2012) (summarizing 29 U.S.C. § 1113). Because more than six years passed between October 2009 and the time when Mr. White first commenced suit in 2022, this claim is also untimely.

11

**I.D. Fraud**

Finally, Plaintiff brings a claim for fraud. In Ohio, the statute of limitations for fraud (other than identity fraud) is four years. Ohio Rev. Code § 2305.09. Therefore, the time to bring an action for fraud has long since passed.

**II. Exceptions to the Applicable Limitations Periods**

Although the applicable statutes of limitations bar Plaintiff's claims, certain exceptions might yet allow them to proceed. Plaintiff maintains that the doctrine of equitable tolling applies and allows this action to proceed. (ECF No. 43, PageID #983.) Tolling is appropriate, Plaintiff argues, because he had no notice of wrongdoing and has diligently pursued his claims. (*Id.*, PageID #983–86.) Plaintiff does not invoke the discovery rule to argue for running the applicable limitations periods from November 2022, when he claims he learned of the allegedly fraudulent conduct of which he complains (for example, changes to his address). In any event, the discovery rule does not apply to contract or fiduciary duty claims.

**II.A. Equitable Tolling**

"Equitable tolling should be applied sparingly," and only where a plaintiff bears no fault for the untimeliness of the filing. *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002). Plaintiff bears the burden of showing that his late filing resulted from circumstances beyond his control. *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017). "Only exceptional circumstances, not garden variety claims of excusable neglect, allow [a court] to toll the statute of limitations." *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 913 (6th Cir. 2010) (cleaned up).

In evaluating whether equitable tolling applies, the Sixth Circuit traditionally considers the following list of non-exclusive factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing his rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirements. *Zappone*, 870 F.3d at 556 (quoting *Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014)). These factors are neither comprehensive nor material in all cases. *Id.* (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). Based on the arguments that Plaintiff presents, the Court considers the first, second, and third factors as the most salient ones here.

### II.A.1. Notice of the Filing Requirements

Two of the factors for equitable tolling look to whether Plaintiff had actual notice or constructive knowledge of the filing deadline. Because both factors involve similar considerations, the Court will evaluate them together. *See Turner v. Mills*, 219 F. App'x 425, 428 (6th Cir. 2007) (citing *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir.2003)). Plaintiff contends that his incarceration and the subterfuge of Defendants' employees prevented him from receiving any notices regarding the changes to his policy and that he lacked actual knowledge of potential wrongdoing. (ECF No. 43, PageID #978.) However, Plaintiff's argument falls short because it is not enough that Plaintiff lacked actual knowledge—he must also have lacked constructive knowledge.

13

A plaintiff has constructive knowledge where he "should have discovered [something] through the exercise of reasonable diligence." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016). This inquiry is objective, not subjective. That is, it does not examine what a plaintiff did know, but what he should have known if he had been reasonably diligent. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000).

Here, according to the complaint—construed in Plaintiff's favor—Mr. White had constructive knowledge that Policy 922 was no longer in force when he stopped making payments or receiving its contractually mandated notices. To keep the policy in force, Plaintiff had to make semi-annual premium payments of $1,200. (ECF No. 34-2, PageID #613 & #623). The policy would stop, subject to the grace period, if he failed to make adequate payments. (*Id.*, PageID #623.) Additionally, Policy 922 states that it would send a "[r]eminder notice if you pay annually, semi-annually, or quarterly." (*Id.*)

Even assuming that some time might pass before a reasonable person noticed that he was no longer paying insurance premiums, too much time passed here for Plaintiff's inaction to be objectively reasonable. For any of Plaintiff's claims to survive the applicable statutes of limitations, the clock could not start running earlier than April 2014, eight years before the expiration of what would then have been the limitations period for breach-of-contract claims—the longest of Plaintiff's limitations periods. The allegedly fraudulent policy conversion occurred in September 2009. (ECF No. 33-5, PageID #509.) In March 2012, a payment history chart showed no

14

premium payments since November 2008. That means Mr. White missed at least three semi-annual payments, counting conservatively, and likely more. These circumstances gave him constructive knowledge that the status of his insurance policy had changed, even if he could not have known the precise details of what occurred. But, as discussed below, he did not take any steps to inquire about his policy until 2021.

### II.A.2. Reasonable Diligence

Plaintiff's constructive knowledge provides context for the analysis of the third equitable tolling factor, exercise of reasonable diligence in pursuing his rights. Plaintiff did not inquire about his policy until December 2021, nine years after he last received any notices about it and at least as long after he last paid a premium. This record does not show reasonable diligence, even accounting for Mr. White's incarceration during some or all of this time. Plaintiff makes general assertions of his diligence in pursuing his rights, but a "mere allegation of due diligence without asserting what steps were taken is insufficient." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). And the first of his numerous court filings commenced after the expiration of the statutes of limitations.

Alternatively, Plaintiff argues that the Court should toll time from April 28, 2010, the date he "missed his Due Payment Notice," to the date of his first lawsuit, filed on April 14, 2022. (ECF No. 43, PageID #986.) Mr. White's failure to exercise reasonable diligence, by his own admission in making this argument, forecloses equitable tolling as he proposes—and particularly for the length of time he proposes,

15

which exceeds the limitations period for any claim Plaintiff asserts. In other words, even the time period he proposes—twelve years from April 2010 to April 2022—exceeds the statutes of limitations applicable to his claims.

Finally, Plaintiff cites Sections 2305.06 and 2305.07 of the Ohio Revised Code for the proposition that the statute of limitations begins to run only when he became aware of the injury or breach. But these statutes have no bearing on his argument. Section 2305.06 simply provides a six-year statute of limitations for breach of contract. It does not speak to when the cause of action accrues. Section 2305.07(A) governs contracts not in writing, Section 2305.07(B) governs statutory liability, and Section 2305.07(C) governs consumer transactions incurred primarily for personal, family, or household purposes. Plaintiffs' claims do not fall into any of these categories. Even if they did apply, none of these subsections contains any language supporting his argument.

### II.B. Fraudulent Concealment

For the sake of completeness, the Court addresses the potential for equitable tolling under the fraudulent concealment doctrine. Plaintiff does not expressly raise this argument but alludes to the issue at times. (*See, e.g.*, ECF No. 43, PageID #985.) The fraudulent concealment doctrine is an exception to the general rule that courts "will not extend the statute of limitations 'by even a single day.'" *Ruth*, 604 F.3d at 910 (quoting *Graham-Humphreys*, 209 F.3d 552, 561 (6th Cir. 2000)). It applies where defendants "fraudulently conceal their wrongdoing and prevent a plaintiff from filing suit during the limitations period." *Id.*

16

Here, Plaintiff "cannot show that the alleged concealment prevented [him] from discovering any wrongdoing during the limitations period"—there are no allegations that Defendants prevented him from inquiring into his insurance policy after he stopped receiving notices or making payments. *See id.* Indeed, when Plaintiff did inquire about the status of his life insurance in December 2021, Lincoln Benefit Life responded less than two weeks later. (ECF No. 33-3, PageID #486 & #488.) Nor can Plaintiff show that he "exercised diligence in trying to uncover" the allegedly fraudulent conduct—he does not allege that he made any such inquiries before December 2021. *See Ruth*, 604 F.3d at 910. The Court "cannot excuse [Plaintiff's] lack of diligence because [he] *might* not have discovered [his] claim during the limitations period even had [he] acted diligently." *Id.* at 913. Instead, Plaintiff bears the burden of demonstrating that he acted with reasonable diligence. But the record lacks such evidence.

* * *

Accordingly, the Court determines that Plaintiff possessed constructive knowledge, failed to pursue his rights with reasonable diligence, and does not qualify for equitable tolling under the fraudulent concealment doctrine.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss the complaint (ECF No. 34; ECF No. 35; ECF No. 36).

17

**SO ORDERED.**

Dated: May 29, 2025

                                              J. Philip Calabrese
                                              United States District Judge
                                              Northern District of Ohio